# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00934-CV

---

### In re Rise Title, LLC d/b/a Rise Title of Texas

---

### ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY

---

### D I S S E N T I N G   O P I N I O N

Without doubt, the power to punish a party who fails or refuses to obey a prior court order or decree is an inherent power of a court and is an essential element of judicial independence and authority. *See Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding). However, "[c]ontempt is strong medicine—the alleged contemnor's very liberty is often at stake—and so it should be used only as a last resort." *Ex parte Pink*, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988).

This original proceeding requires us to examine the intersection of in rem proceedings and the due-process safeguards applying in contempt proceedings and decide an issue of first impression: whether the in rem nature of a proceeding overrides a party's due-process right to notice of that which it is commanded to do in clear, unambiguous language before it may be held in contempt of a court order. Because I believe the answer to that question is no, and that general contempt principles apply equally to in rem proceedings as to other proceedings, I respectfully dissent from the Court's denial of the mandamus petition.

Contempt orders are not reviewable by direct appeal; therefore, the second prong of mandamus review—that the relator has no adequate remedy by appeal—is satisfied. *See Caldwell v. Garfutt*, No. 03-12-00696-CV, 2014 WL 1576871, at \*1 (Tex. App.—Austin Apr. 17, 2014, orig. proceeding) (mem. op.); *see also In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (observing that when contemnor is not jailed, proper vehicle to challenge contempt order is writ of mandamus, which requires contemnor to show that trial court abused its discretion); *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding) (outlining two prongs relator must demonstrate in mandamus proceedings). We therefore need to consider only whether the trial court clearly abused its discretion. *See Caldwell*, 2014 WL 1576871, at \*1.

A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). Even where the law is unsettled or the issue is one of first impression, as here, a court abuses its discretion if its legal decision is incorrect. *See In re Silver*, 540 S.W.3d 530, 538 (Tex. 2018) (orig. proceeding).

Contempt is "disobedience to or disrespect of a court by acting in opposition to its authority." *In re Reece*, 341 S.W.3d at 364. It is a broad and inherent power of a court that should be exercised with caution. *Id.* Civil contempt is remedial and coercive in nature— conditioned on obedience with the court's order. *Id.* at 365. Thus, civil contempt is the process by which a court exerts its judicial authority to compel obedience to some order of the court. *In re Krueger*, No. 03-12-00838-CV, 2013 WL 2157765, at \*4 (Tex. App.—Austin May 16, 2013, orig. proceeding) (mem. op.) (citing *Ex parte Padron*, 565 S.W.2d 921, 924 (Tex. 1978)).

On the other hand, criminal contempt is punitive in nature—"the contemnor is being punished for some completed act which affronted the dignity and authority of the court." *In re Reece*, 341 S.W.3d at 365. Thus, the distinction between criminal and civil contempt does not turn on whether the underlying litigation is civil or criminal, but rather on the nature of the court's punishment. *Id.* Here, although the receiver's motion asked the trial court to find Rise in civil contempt, I would hold that the Contempt Order operates as criminal contempt because it punishes Rise for its completed act of depositing the sales proceeds into Houston's bank account rather than into the court registry, as purportedly required of Rise.[1] *See id.* (explaining that appellate courts determine type of contempt order by examining "the purpose behind the contempt order").

"A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) (quoting *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding)). Because criminal contempt is a "harsh sanction," the supreme court has "strictly required clarity in the underlying court orders." *Id.* A trial court necessarily abuses its discretion if it holds a person in contempt for violating an ambiguous order. *Id.* To avoid such ambiguity, the order allegedly violated "must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Id.* (quoting *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding)). The

---

[1] Although Rise does not raise this issue, because Rise already deposited the funds into the bank account owned by the Estate, as directed by the dependent administrator, and is no longer in possession of the funds, I believe that the Contempt Order's requiring Rise to deposit $131,412.73 into the registry within twenty days operates effectively as a fine and far exceeds the $500 statutory maximum applicable here. *See* Tex. Gov't Code § 21.002(b).

3

order's interpretation may "not rest upon implication or conjecture." *Slavin*, 412 S.W.2d at 44. Rather, the alleged violation "must be directly contrary" to the order's express terms, and if the order's interpretation requires inferences or conclusions about which reasonable persons might differ, it cannot support a contempt judgment. *In re Janson*, 614 S.W.3d at 727.

Although I believe that the Contempt Order is punitive (and thus criminal) rather than coercive (and thus civil), the distinction is without importance for our review because the same standard of providing notice to the contemnor applies to both types of contempt: the underlying order must set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the order will readily know exactly what duties and obligations are imposed on it. *See In re Johnson*, 996 S.W.2d 430, 433–34 (Tex. App.—Beaumont 1999, no pet.). "Whether an order is enforceable by contempt depends on whether the order is definite and certain, and the focus is on the wording of the order itself." *In re Barrett*, No. 03-13-00742-CV, 2013 WL 6921312, at *2 (Tex. App.—Austin Dec. 23, 2013, orig. proceeding) (mem. op.). "The underlying order must unequivocally command a person to perform a duty or obligation," *id.* (citing *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding)), and the order "must be in the form of a command directed to the person rather than a mere declaration of the occurrence of an event in which he may be involved," *Ex parte Snow*, 677 S.W.2d 147, 149 (Tex. App.—Houston [1st Dist.] 1984, no writ).

Most importantly, the Sale Decree fails these tests because it does not clearly and unequivocally command Rise to do anything. *Cf. In re Barrett*, 2013 WL 6921312, at *2; *Snow*, 677 S.W.2d 149. In the same vein, the Sale Decree is indefinite and uncertain, specifying merely in the passive voice—without identifying any specific person responsible for the ordered act— that proceeds from the sale "shall be deposited" into the court registry. It therefore requires

4

implication and conjecture about who is being ordered to make such a deposit—and when and under what circumstances—and is ambiguous as a matter of law. *See Slavin*, 412 S.W.2d at 44.

Furthermore, to hold a party in contempt, three things are necessary: (1) jurisdiction of the subject-matter; (2) jurisdiction of the person; and (3) the authority of the court to render the particular judgment. *Ex parte Britton*, 92 S.W.2d 224, 226 (Tex. 1936) (orig. proceeding) (concluding that because relator was not party to litigation in which receiver was appointed to foreclose on property held by debtor, trial court was without authority to hold relator in criminal contempt for failure to turn over to receiver rents claimed to be due on such property, despite receiver's general authority to take possession of property involved in litigation). Personal jurisdiction is invoked by a party's appearance before the court or by the proper service of process upon the party. *In re Texas Prop. & Cas. Ins. Guar. Ass'n*, No. 11-25-00191-CV, 2025 WL 2412844, at *6 (Tex. App.—Eastland Aug. 21, 2025, orig. proceeding) (mem. op.); *see also* Tex. R. Civ. P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as prescribed in these rules, except where otherwise expressly provided by law or these rules."). Rise Title was not served, nor did it voluntarily appear in the trial-court proceedings until it was ordered to appear and show cause why it should not be held in *civil* contempt—not *criminal*, as the trial court found—for violating the Decree by failing to deposit the proceeds into the court registry.

Without personal jurisdiction over Rise, the trial court's Decree could not constitute a binding, valid order with which Rise could fail to comply and thus subject it to contempt, either through compulsion or by punishment. *See Texas Prop. & Cas. Ins. Guar. Ass'n*, 2025 WL 2412844, at *4–5 ("Without personal and subject-matter jurisdiction, the trial

5

court cannot issue a valid and binding order over the party it purports to bind." (citing *In re Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022))); *In re Suarez*, 261 S.W.3d 880, 882–83 (Tex. App.—Dallas 2008, orig. proceeding) ("Generally, a trial court does not have jurisdiction to enter a judgment or order against a respondent unless the record shows proper service of citation on the respondent, or an appearance by the respondent, or a written memorandum of waiver at the time the judgment or order was entered."). Although there are instances when a trial court may hold a non-party in contempt, such as when the non-party refuses to comply with a subpoena to produce documents or to comply with a court order to appear for a deposition or to permit inspection of land, none of those special circumstances existed in this case. *See In re Texas Prop. & Cas. Ins. Guar. Ass'n*, 2025 WL 2412844, at *7 (citing Tex. R. Civ. P. 176.8(a), 196.7, 205.3(a), 215.2(a), (c)). In certain other types of cases, such as in receivership proceedings in which a court has issued a turnover order, statutory procedures are in place to ensure that a third party in possession of the debtor's assets receives a certified copy of the turnover order, and those statutes expressly authorize the remedy of contempt for failure to comply with a turnover order. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 31.002(c), (g). But there are no such statutes or rules that apply here.

I recognize that probate proceedings are in rem and that the supreme court has stated that judgments rendered therein are "binding upon the whole world." *See Ladehoff v. Ladehoff*, 436 S.W.2d 334, 336 (Tex. 1968). But the context in which that statement was made reveals a concern with balancing the need for finality of judgments involving the property of a decedent—despite the fact that some interested persons might not have been served with process—with a process by which interested parties may directly attack such judgments under prescribed circumstances. *See id.* at 336–37; *Turcotte v. Trevino*, 499 S.W.2d 705, 719 (Tex.

6

App.—Corpus Christi 1973, no writ). The "binding upon the whole world" principle and the policies it advances can peacefully coexist with the due-process requirements and safeguards of contempt law, including the requirement that an underlying order expressly command a party to do something in clear, specific, and unambiguous terms before that party may be held in contempt of the order. *See Ex parte Price*, 741 S.W.2d 366, 367 (Tex. 1987). Absent direct guidance from the supreme court expressly applying the *Ladehoff* principle to contempt proceedings, I would hold that the mere fact that a proceeding is in rem does not outweigh the due-process and statutory protections applying to contempt proceedings.

A trial court's power and "ability to punish for contempt is not unfettered," and its contempt order is void if the order deprives the relator of liberty without due process of law or, as here, exceeds the power of the trial court. *In re Reece*, 341 S.W.3d at 366; *Barnett*, 600 S.W.2d at 254. I would hold that the trial court clearly abused its discretion by issuing the Contempt Order and, therefore, I respectfully dissent from the Court's denial of Rise's petition for writ of mandamus.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Filed: July 10, 2026